UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN P. HILL Sr., #223781                     No. 08-13852

        Plaintiff,                          District Judge George Caram Steeh

v.                                              Magistrate Judge R. Steven Whalen

K. GREEN, et al,

        Defendants.
_____ /

## REPORT AND RECOMMENDATION

Before this Court is Defendants Michael Denise, Matthew Dunaj, Keith Green, Connie Ignasiak and James Van Acker's August 13, 2009 *Motion for Summary Judgment* pursuant to Fed. R. Civ. P 12(b)(6) and 56(b) [Docket #26], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED, dismissing Eighth Amendment claims against all Defendants WITH PREJUDICE. In the absence of constitutional violations, Defendants are also entitled to qualified immunity.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, a Michigan Department of Corrections ("MDOC") inmate currently housed at the Ernest C. Brooks Correctional Facility, filed a civil rights claim pursuant to 42 U.S.C. §1983 on September 8, 2008, alleging violations of his Eighth and Fourteenth Amendment

rights while housed at the Gus Harrison Correctional Facility ("ARF").   Proceeding *pro se,* Plaintiff alleges that at the time of his December, 2006 assignment to a food services position at ARF, he advised Defendants Green and Ignasiak, supervising staff members, that he had not received formal training in using the kitchen's industrial sized food slicer ("Hobart mixer").[1]   *Complaint* at pg. 9 of 16. Plaintiff alleges that prior to his request for training, another prisoner who had recently "sliced his fingers on the machine" told him that "there may have been a mis-functioning error in the on/off switch."   *Id.*   Plaintiff alleges that he later voiced the same concerns to Defendant Van Acker, also a food service supervisor, who told Plaintiff "to work the machine or receive a misconduct report." *Id.*

Plaintiff alleges that as a result of the threat, he complied, but raised his concerns again on February 21, 2007. *Id.*   He alleges that Van Acker again ordered him to "either . . . get to work or I'll find someone to take your place."   Plaintiff claims that Van Acker then ordered another prisoner ("Lutes") to help Plaintiff operate the machine.   *Id.*   Plaintiff alleges next that "after I finished using the mixer machine[,] Lutes turned the machine off," and "after wait[ing] several minutes after the motor stopped running," Plaintiff "started to clean the machine as ordered . . . by Van Acker."   *Id.*   Unaware that "the blade inside was still running," he alleges that upon reaching inside the machine, the second and third fingers of his right hand were severed by the machine.   *Id.*   Plaintiff was immediately transported

---

[1]The Complaint's allegations total six sentences.   *Complaint* at 6.   The factual background is drawn from both the Complaint itself and Plaintiff's February 25, 2007 Step One grievance which describes the events in greater detail.   *Id.* at 9, Grievance Identifier MRF 2007-03-02340-02f.

to a nearby hospital for emergency treatment. *Id.*

Plaintiff alleges that Van Acker "was aware" that the machine "had a mechanical flaw based upon the fact that the prisoner whom he had delegated to train [Plaintiff] had in fact sliced his finger based upon the malfu[n]ctioning and shortage in the on/off switch on the machine." *Id.* Plaintiff alleges that prior to his own accident, Defendants Green, Van Acker, and Denise informed him repeatedly that if he refused to operate the machine, he would receive a major misconduct ticket, be terminated from his position, and/or "receive a negative work report that could result in denial of parole for refusal to work." *Id.* Plaintiff claims that he "followed these orders under extreme duress." *Id.* He alleges that he was never given an instruction manual or any formal or informal training on the machine. *Id.* Plaintiff also claims that "no warning sign was ever posted near or on the machine . . . describing any dangers associated with its operations." *Id.*

Plaintiff alleges that on the day following his injury, Defendant Green promised Plaintiff that if he signed an "agreement," Green "would see to it" that Plaintiff would receive a "less strenuous job." *Id.*[2] Plaintiff claims that he informed Green that he intended to file a grievance. *Id.* On February 25, 2007, Plaintiff filed a grievance, alleging that Defendants Green, Van Acker, Ignasiak, Denise, and Dunja were deliberately indifferent to his health and safety. *Id.* Plaintiff alleges that when his medical leave ended in May, 2007,

---

[2]Allegations from this point forward pertain to Plaintiff's now dismissed unexhausted First Amendment retaliation claims and are included for background purposes only. The analysis does not include discussion of the unexhausted claims.

he was terminated from the food services position in retaliation for filing the February 25, 2007 grievance against Defendants. *Id.* at 6. Plaintiff requests monetary damages for his injury and the loss of income. *Id.*

Defendants originally moved for summary judgment on February 25, 2009. *Docket #17.* On August 4, 2009, this Court issued a Report and Recommendation, recommending that the official capacity claims be dismissed with prejudice; First Amendment retaliation claims be dismissed without prejudice; and denying the motion for judgment on the Eighth Amendment claims. *Docket #25* at 1, 14. The Honorable George Caram Steeh adopted the Report on August 25, 2009. *Docket #27.* Defendants filed the present motion on August 13, 2009. *Docket #26.*

## II.  STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In assessing the complaint's sufficiency, the court must first determine whether a

complaint contains factual allegations, as opposed to legal conclusions. *Ashcroft v. Iqbal*, ---U.S.---, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. at 1949 (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007)). Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."

129 S.Ct. at 1950 (internal citations omitted).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary

judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III.  ANALYSIS

Defendants argue that Plaintiff's inability to show that they were deliberately indifferent to his health or safety mandates dismissal of the Eighth Amendment claims. *Defendants' Brief* at 4-6 (*citing Williams v. Mehra,* 186 F. 3d 685, 691 (6ᵗʰ Cir. 1999)); *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). They contend further that in even in the presence of a constitutional violation, they are immune from suit by Eleventh Amendment and qualified immunity. *Defendants' Brief* at 6-8.[3]

The Eighth Amendment proscribes the infliction of cruel and unusual punishment upon prisoners. In order for a prisoner to establish an Eighth Amendment violation under § 1983, he must allege and prove an unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification. *See Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 346 (1981). Eighth Amendment claims must satisfy a two-prong standard. First, the alleged wrongdoing must be "objectively harmful enough" to establish a constitutional claim (objective component). Second, the prison official must act with the requisite state of mind (subjective component). *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), citing *Wilson v. Seiter*, 501 U.S. 294, 298, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

The objective component is contextual and responsive to "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (citing *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285,

---

[3]Because the District Court already dismissed *official* capacity claims, Defendants' present arguments in favor of Eleventh Amendment immunity will not be addressed here. *Docket #27* at 2.

50 L.Ed.2d 251 (1976)).  The Supreme Court has clearly held that "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated."  *Id.* at 9.  Therefore, a prisoner need not show a significant injury.  *Id.; Moore v. Holbrook*, 2 F.3d 697, 701 (6th Cir. 1993) (citing *Hudson* to conclude that the extent of injuries does not provide a basis for dismissal).

In regard to the subjective component, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer, supra,* 511 U.S. at 837, 114 S.Ct. at 1979.  In finding that negligence was insufficient to establish a constitutional claim, the Court held that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

## A.   Defendants Denise, Dunaj, Green, and Ignasiak

The Complaint names Denise and Dunaj, food service stewards; Green, food services director; and Ignasiak, an assistant food service director, as Defendants.  *Complaint* at pgs. 2,4-5.  Claims against Denise are limited to allegations that he, along with Green and Van Acker, ordered Plaintiff to operate the Hobart mixer prior to the February 21, 2007 injury:

> "on several occasions under the threat [that] if I did not, I would receive a major misconduct report, get fired from my job, issued a negative work report that could result in denial of parole for refusal to work and that I followed these orders under extreme duress"

*Complaint* at pg. 9.  However, Plaintiff does not allege that Denise or Green's orders to operate the mixer on *previous* occasions, even if true, caused the February 21, 2007 injury or that either Denise or Green was even present at that time of his injury.  Further, while Plaintiff names Dunja in his February 25, 2007 grievance (construed as part of the Complaint) as well as the body of the Complaint, neither the text of the grievance nor the Complaint contains allegations against this Defendant.

Plaintiff's grievance also states that he informed Defendant Ignasiak that he "ha[d] no formal training in the machinery used" and that he believed that the machine malfunctioned.  He does not allege that Ignsiak ordered him to use the machine on the day of the injury or any other occasion, or supervised the manner in which prisoners used the Hobart mixer.   Further, I note that while Plaintiff's response and affidavit to the present motion reiterates the allegations against Green, it contains no mention of Denise, Dunaj, or Ignsiak.   Because he has failed to develop any factual basis for the Eighth Amendment allegations against these individuals, they should be dismissed with prejudice.

**B.  Defendant Van Acker**

**1.  Plaintiff's Affidavits**

Plaintiff's affidavit states that he requested, but did not receive training in use of the Hobart mixer before commencing the prep cook position in December, 2006.  *Affidavit of Steven Hill* at ¶¶1-2, *Docket #29.*  Plaintiff acknowledges that prison staff directed another inmate to train him, but that the individual (Lutes) "refused due to . . . being previously

injured on [the] machine." *Id.* at ¶1.  The affidavit states further that Plaintiff voiced his concerns to Defendant Green, who told him to "quit repeating these rumors" under threat of job termination and transfer and that he operated the Hobart mixer "[u]nder fear and duress." *Id.* at ¶2.

 Plaintiff asserts that on the day of injury, after Lutes had turned off the switch, "Van Acker told me hurry and clean the machine out." *Id.* at ¶4.  Upon reaching inside the machine, he reports that because "the machine's motor was still running," the blade "cut off two . . . fingers on [the] right hand." *Id.* at ¶4.  He alleges that Van Acker, aware both of Plaintiff's "fear of the machine," and that another prisoner had been injured, nonetheless ordered him to use the mixer under threat of termination.  *Id.* at ¶5.

Plaintiff, although acknowledging that he received Hobart Mixer training, states that he received no "hands on training." *Response* at 4.  He alleges that instead, he was limited to "book lessons from the Food Tech book."  *Id.*  He claims that a January 18, 2007 "Equipment Safety Instruction" sheet included with Defendants' motion, stating that he received instruction in "how to safely operate and clean" a Hobart Mixer, and bearing his signature, was forged.  *Id.* (*citing Docket #26,* Exhibit 1).  The affidavit of a prisoner who witnessed the accident states that prior to Plaintiff's injury, "there was no mandate for formal training to operate any machine or hold a prep-cook position.  *Affidavit of Reggie Welch* at ¶5.  "Also, there were no warning signs, or operational drawing signs[] posted anywhere dealing with this machine." *Id.*  However, the affidavit states  that after Plaintiff's injury, "it

became mandated we take classes, sign a piece of paper stating we know how to properly use the machine." *Id.* at ¶6.[4]

### 2. Van Acker's Affidavit

Van Acker's affidavit states that he "trained Plaintiff on the Hobart Mixer on January 19, 2007." *Docket #26, Exhibit 2, Affidavit of James VanAcker* at ¶3, (*citing Id.,*Exhibit 1).[5] Van Acker also claims that Plaintiff received a Food Tech Certificate in August, 2003 showing that he had received Hobart Mixer training. *Id.* at ¶4 (*citing Id.,* Exhibit 4). Following the disputed "hands on" January 19, 2007 training, Van Acker states that "Plaintiff operated the Hobart mixer for approximately 30 days after being trained on its operation before the February 21, 2007 injury. *Id.* at ¶5. The affidavit states that "Plaintiff made no known complaints to MDOC staff regarding the use of the mixer or his training prior to the accident" and did not ask Van Acker for additional training. *Id.* at ¶6. Van Acker also notes that the mixer "has a metal-plated . . . sign attached to the front and the side" cautioning against putting hands into the feed opening, instead advising users to use the "feed stomper." *Id.* at ¶7 (*citing Id.,* Exhibits 6-7).

### 3. Eight Amendment Claims Against Van Acker Should be Dismissed

Putting aside Van Acker's affidavit, Plaintiff's allegations, taken as true, are

---

[4]Misnumbered as paragraph "5" in the affidavit.

[5]

The affidavit by Van Acker' references exhibit numbers as ordered in a previous filing. *See Docket #20.* For ease of reference, the undersigned has cited to the correct exhibit numbers.

nonetheless insufficient to establish an Eight Amendment violation.  The Court assumes for the sake of argument that, as stated in Plaintiff's affidavit 1)Van Acker did *not* train him on the mixer 2) no "hands on training" was ever received and 3) Plaintiff's signature on the January 19, 2007 document showing that he received training was forged.  The Court will also assume that Plaintiff asked for additional training and that he was directed by Van Acker (under threat of termination and transfer) to use the machine despite his reservations.  However, Plaintiff acknowledges that 1) that he received "book lessons from the Food Tech book." (*Response* at 4) and 2) prison staff directed another inmate to train him.  *Plaintiff's Affidavit* at ¶1.  Significantly, while Plaintiff notes that the inmate directed to help him refused, he does not allege that staff members were aware that he had not received training from the other inmate. Even considering Plaintiff's contentions in the best possible light, his acknowledgment that he received book training on the mixer and that staff members directed another inmate to give him additional instruction on the mixer, undermines his claim that Van Acker perceived, and then ignored a risk to his well-being.

The Court also considers Reggie Welch's affidavit which states that prior to Plaintiff's injury "there [were] no warning signs[] or operational drawing[s] . . . posted anywhere dealing with [the mixer]" and that as a result of the accident, prisoners have received formal instruction in the use of the machine.  *Affidavit of Reggie Welch* at ¶5.  Notably, while Van Acker's affidavit states that a warning sign is now affixed to the mixer, it does not indicate whether the sign was in place at the time of Plaintiff's injury.  *Affidavit of James Van Acker*

-12-

at ¶7.

Nonetheless, when Van Acker ordered Plaintiff to "hurry up and clean the machine out"on February 21, 2007, there is no indication that he perceived, then ignored a risk to Plaintiff. *Id.* at ¶4. Although Lutes allegedly received an injury just before Plaintiff began the kitchen position in December, 2006, Plaintiff and others used the machine from that point forward on a presumably daily basis without injury.[6] Plaintiff does not allege that the machine appeared to be malfunctioning on the day of the accident or at anytime in the previous month.

In addition, although Plaintiff claims that the machine was defective, the accident report does not indicate that the mixer was malfunctioning, stating instead that after Lutes turned off the mixer, "[Plaintiff] put his hand in before it had stopped . . . not knowing [whether] machine had totally stopped." *Docket #26,* Exhibit 5. Finally, I note that although Plaintiff claims that he was fearful of using the machine in the month leading up to the incident, he does not allege that Van Acker ever ordered him to use the machine in a manner that would risk his safety, *i.e.*, putting his hand in the feeder while the machine was engaged. While Plaintiff argues that Van Acker *should* have known of the potential for injury, the question of whether this Defendant's actions rose to the level of mere negligence (insufficient to support the constitutional claim) is not before this Court. *Farmer, supra,* 511 U.S. at 837,

---

[6] Plaintiff's affidavit indicates that Lutes was injured in December, 2006 or earlier. *Id.* at ¶1.

-13-

114 S.Ct. at 1979.

I note in closing that Van Acker's actions directly following the injury (while not dispositive of the Eighth Amendment claims) are also inconsistent with allegations of deliberate indifference. Plaintiff admits that when Van Acker was informed of the injury, he immediately contacted health services, complied with medical advice to locate the fingertips, and arranged emergency treatment. *Affidavit of Reggie Welch,* at ¶3. While Plaintiff alleges that he continues to "have trouble" with the previously injured fingers, Van Acker's actions following the accident appear to have been timely and appropriate. *Affidavit of Steven Hill* at ¶6.

### C. Qualified Immunity

Defendants also argue that dismissal should be granted on the basis of qualified immunity. *Defendants' Brief* at 7-8. Because Plaintiff's Eighth Amendment rights were not violated, Defendants are also entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under *Saucier*, the threshold question is whether a constitutional violation occurred. If it did not, a state officer or agent acting in the course of his or her official duties is protected by qualified immunity. *See also Dunigan v. Noble,* 390 F.3d 486, 495 (6th Cir. 2004).[7]

---

[7] More recently, the Supreme Court held that the two-step sequential analysis set forth in *Saucier* (first, determine whether there was a constitutional violation, and second, determine whether the constitutional right was clearly established) is no longer mandatory. *Pearson v. Callahan*, — U.S. — , 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); *See also,*

## IV.  CONCLUSION

For these reasons, I recommend that the motion be GRANTED, dismissing Eighth Amendment claims against all Defendants WITH PREJUDICE.   In the absence of constitutional violations, Defendants are also entitled to qualified immunity.

Any objections to this  Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).   Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D.

---

*Moldowan v. City of Warren* 578 F.3d 351, 375 (6th Cir. 2009).   Nevertheless, *Pearson* observed that the *Saucier* protocol, while not required, remains useful in particular cases. In this case, it is sufficient to say that under the first prong of *Saucier,* Plaintiff has not shown a constitutional violation as to any of Defendants.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  January 25, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 25, 2010.

s/Susan Jefferson
Case Manager

-16-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN P. HILL Sr., #223781                    No. 08-13852

        Plaintiff,                         District Judge George Caram Steeh

v.                                             Magistrate Judge R. Steven Whalen

K. GREEN, et al,

        Defendants.
_____ /

### REPORT AND RECOMMENDATION

Before this Court is Defendants Michael Denise, Matthew Dunaj, Keith Green, Connie Ignasiak and James Van Acker's August 13, 2009 *Motion for Summary Judgment* pursuant to Fed. R. Civ. P 12(b)(6) and 56(b) [Docket #26], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED, dismissing Eighth Amendment claims against all Defendants WITH PREJUDICE. In the absence of constitutional violations, Defendants are also entitled to qualified immunity.

### I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, a Michigan Department of Corrections ("MDOC") inmate currently housed at the Ernest C. Brooks Correctional Facility, filed a civil rights claim pursuant to 42 U.S.C. §1983 on September 8, 2008, alleging violations of his Eighth and Fourteenth Amendment

-1-

rights while housed at the Gus Harrison Correctional Facility ("ARF").  Proceeding *pro se,* Plaintiff alleges that at the time of his December, 2006 assignment to a food services position at ARF, he advised Defendants Green and Ignasiak, supervising staff members, that he had not received formal training in using the kitchen's industrial sized food slicer ("Hobart mixer").[1]  *Complaint* at pg. 9 of 16. Plaintiff alleges that prior to his request for training, another prisoner who had recently "sliced his fingers on the machine" told him that "there may have been a mis-functioning error in the on/off switch."  *Id.*  Plaintiff alleges that he later voiced the same concerns to Defendant Van Acker, also a food service supervisor, who told Plaintiff "to work the machine or receive a misconduct report." *Id.*

Plaintiff alleges that as a result of the threat, he complied, but raised his concerns again on February 21, 2007. *Id.*  He alleges that Van Acker again ordered him to "either . . . get to work or I'll find someone to take your place."  Plaintiff claims that Van Acker then ordered another prisoner ("Lutes") to help Plaintiff operate the machine.  *Id.*  Plaintiff alleges next that "after I finished using the mixer machine[,] Lutes turned the machine off," and "after wait[ing] several minutes after the motor stopped running," Plaintiff "started to clean the machine as ordered . . . by Van Acker."  *Id.*  Unaware that "the blade inside was still running," he alleges that upon reaching inside the machine, the second and third fingers of his right hand were severed by the machine.  *Id.*  Plaintiff was immediately transported

_____

[1]The Complaint's allegations total six sentences.  *Complaint* at 6.  The factual background is drawn from both the Complaint itself and Plaintiff's February 25, 2007 Step One grievance which describes the events in greater detail.  *Id.* at 9, Grievance Identifier MRF 2007-03-02340-02f.

-2-

to a nearby hospital for emergency treatment. *Id.*

Plaintiff alleges that Van Acker "was aware" that the machine "had a mechanical flaw based upon the fact that the prisoner whom he had delegated to train [Plaintiff] had in fact sliced his finger based upon the malfu[n]ctioning and shortage in the on/off switch on the machine." *Id.* Plaintiff alleges that prior to his own accident, Defendants Green, Van Acker, and Denise informed him repeatedly that if he refused to operate the machine, he would receive a major misconduct ticket, be terminated from his position, and/or "receive a negative work report that could result in denial of parole for refusal to work." *Id.* Plaintiff claims that he "followed these orders under extreme duress." *Id.* He alleges that he was never given an instruction manual or any formal or informal training on the machine. *Id.* Plaintiff also claims that "no warning sign was ever posted near or on the machine . . . describing any dangers associated with its operations." *Id.*

Plaintiff alleges that on the day following his injury, Defendant Green promised Plaintiff that if he signed an "agreement," Green "would see to it" that Plaintiff would receive a "less strenuous job." *Id.*[2] Plaintiff claims that he informed Green that he intended to file a grievance. *Id.* On February 25, 2007, Plaintiff filed a grievance, alleging that Defendants Green, Van Acker, Ignasiak, Denise, and Dunja were deliberately indifferent to his health and safety. *Id.* Plaintiff alleges that when his medical leave ended in May, 2007,

---

[2]Allegations from this point forward pertain to Plaintiff's now dismissed unexhausted First Amendment retaliation claims and are included for background purposes only. The analysis does not include discussion of the unexhausted claims.

he was terminated from the food services position in retaliation for filing the February 25, 2007 grievance against Defendants. *Id.* at 6. Plaintiff requests monetary damages for his injury and the loss of income. *Id.*

Defendants originally moved for summary judgment on February 25, 2009. *Docket #17.* On August 4, 2009, this Court issued a Report and Recommendation, recommending that the official capacity claims be dismissed with prejudice; First Amendment retaliation claims be dismissed without prejudice; and denying the motion for judgment on the Eighth Amendment claims. *Docket #25* at 1, 14. The Honorable George Caram Steeh adopted the Report on August 25, 2009. *Docket #27.* Defendants filed the present motion on August 13, 2009. *Docket #26.*

## II.  STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In assessing the complaint's sufficiency, the court must first determine whether a

-4-

complaint contains factual allegations, as opposed to legal conclusions.  *Ashcroft v. Iqbal*, ---U.S.---, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*, 129 S.Ct. at 1949 (citing  *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007)).  Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."

129 S.Ct. at 1950 (internal citations omitted).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary

judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III.  ANALYSIS

-6-

Defendants argue that Plaintiff's inability to show that they were deliberately indifferent to his health or safety mandates dismissal of the Eighth Amendment claims. *Defendants' Brief* at 4-6 (*citing Williams v. Mehra,* 186 F. 3d 685, 691 (6th Cir. 1999)); *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). They contend further that in even in the presence of a constitutional violation, they are immune from suit by Eleventh Amendment and qualified immunity. *Defendants' Brief* at 6-8.[3]

The Eighth Amendment proscribes the infliction of cruel and unusual punishment upon prisoners. In order for a prisoner to establish an Eighth Amendment violation under § 1983, he must allege and prove an unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification. *See Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 346 (1981). Eighth Amendment claims must satisfy a two-prong standard. First, the alleged wrongdoing must be "objectively harmful enough" to establish a constitutional claim (objective component). Second, the prison official must act with the requisite state of mind (subjective component). *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), citing *Wilson v. Seiter*, 501 U.S. 294, 298, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

The objective component is contextual and responsive to "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (citing *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285,

---

[3]Because the District Court already dismissed *official* capacity claims, Defendants' present arguments in favor of Eleventh Amendment immunity will not be addressed here. *Docket #27* at 2.

50 L.Ed.2d 251 (1976)).  The Supreme Court has clearly held that "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated."  *Id.* at 9.  Therefore, a prisoner need not show a significant injury.  *Id.; Moore v. Holbrook*, 2 F.3d 697, 701 (6ᵗʰ Cir. 1993) (citing *Hudson* to conclude that the extent of injuries does not provide a basis for dismissal).

In regard to the subjective component, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer, supra,* 511 U.S. at 837, 114 S.Ct. at 1979.  In finding that negligence was insufficient to establish a constitutional claim, the Court held that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

### A.  Defendants Denise, Dunaj, Green, and Ignasiak

The Complaint names Denise and Dunaj, food service stewards; Green, food services director; and Ignasiak, an assistant food service director, as Defendants.  *Complaint* at pgs. 2,4-5.  Claims against Denise are limited to allegations that he, along with Green and Van Acker, ordered Plaintiff to operate the Hobart mixer prior to the February 21, 2007 injury:

> "on several occasions under the threat [that] if I did not, I would receive a major misconduct report, get fired from my job, issued a negative work report that could result in denial of parole for refusal to work and that I followed these orders under extreme duress"

-8-

*Complaint* at pg. 9.   However, Plaintiff does not allege that Denise or Green's orders to operate the mixer on *previous* occasions, even if true, caused the February 21, 2007 injury or that either Denise or Green was even present at that time of his injury.   Further, while Plaintiff names Dunja in his February 25, 2007 grievance (construed as part of the Complaint) as well as the body of the Complaint, neither the text of the grievance nor the Complaint contains allegations against this Defendant.

Plaintiff's grievance also states that he informed Defendant Ignasiak that he "ha[d] no formal training in the machinery used" and that he believed that the machine malfunctioned.   He does not allege that Ignsiak ordered him to use the machine on the day of the injury or any other occasion, or supervised the manner in which prisoners used the Hobart mixer.    Further, I note that while Plaintiff's response and affidavit to the present motion reiterates the allegations against Green, it contains no mention of Denise, Dunaj, or Ignsiak.    Because he has failed to develop any factual basis for the Eighth Amendment allegations against these individuals, they should be dismissed with prejudice.

**B.  Defendant Van Acker**

**1.  Plaintiff's Affidavits**

Plaintiff's affidavit states that he requested, but did not receive training in use of the Hobart mixer before commencing the prep cook position in December, 2006.  *Affidavit of Steven Hill* at ¶¶1-2, *Docket #29.*  Plaintiff acknowledges that prison staff directed another inmate to train him, but that the individual (Lutes) "refused due to . . . being previously

injured on [the] machine." *Id.* at ¶1.  The affidavit states further that Plaintiff voiced his concerns to Defendant Green, who told him to "quit repeating these rumors" under threat of job termination and transfer and that he operated the Hobart mixer "[u]nder fear and duress." *Id.* at ¶2.

Plaintiff asserts that on the day of injury, after Lutes had turned off the switch, "Van Acker told me hurry and clean the machine out." *Id.* at ¶4.  Upon reaching inside the machine, he reports that because "the machine's motor was still running," the blade "cut off two . . . fingers on [the] right hand." *Id.* at ¶4.  He alleges that Van Acker, aware both of Plaintiff's "fear of the machine," and that another prisoner had been injured, nonetheless ordered him to use the mixer under threat of termination.  *Id.* at ¶5.

Plaintiff, although acknowledging that he received Hobart Mixer training, states that he received no "hands on training." *Response* at 4.  He alleges that instead, he was limited to "book lessons from the Food Tech book."  *Id.*  He claims that a January 18, 2007 "Equipment Safety Instruction" sheet included with Defendants' motion, stating that he received instruction in "how to safely operate and clean" a Hobart Mixer, and bearing his signature, was forged.  *Id.* (*citingDocket #26,* Exhibit 1).  The affidavit of a prisoner who witnessed the accident states that prior to Plaintiff's injury, "there was no mandate for formal training to operate any machine or hold a prep-cook position.  *Affidavit of Reggie Welch* at ¶5.  "Also, there were no warning signs, or operational drawing signs[] posted anywhere dealing with this machine." *Id.*  However, the affidavit states  that after Plaintiff's injury, "it

-10-

became mandated we take classes, sign a piece of paper stating we know how to properly use the machine." *Id.* at ¶6.[4]

### 2.  Van Acker's Affidavit

Van Acker's affidavit states that he "trained Plaintiff on the Hobart Mixer on January 19, 2007." *Docket #26, Exhibit 2, Affidavit of James VanAcker* at ¶3, (*citing Id.,*Exhibit 1).[5] Van Acker also claims that Plaintiff received a Food Tech Certificate in August, 2003 showing that he had received Hobart Mixer training.  *Id.* at ¶4 (*citing Id.,* Exhibit 4). Following the disputed "hands on" January 19, 2007 training, Van Acker states that "Plaintiff operated the Hobart mixer for approximately 30 days after being trained on its operation before the February 21, 2007 injury. *Id.* at ¶5.  The affidavit states that "Plaintiff made no known complaints to MDOC staff regarding the use of the mixer or his training prior to the accident" and did not ask Van Acker for additional training. *Id.* at ¶6.  Van Acker also notes that the mixer "has a metal-plated . . . sign attached to the front and the side" cautioning against putting hands into the feed opening, instead advising users to use the "feed stomper." *Id.* at ¶7 (*citing Id.,* Exhibits 6-7).

### 3.  Eight Amendment Claims Against Van Acker Should be Dismissed

Putting aside Van Acker's affidavit, Plaintiff's allegations, taken as true, are

---

[4]Misnumbered as paragraph "5" in the affidavit.

[5]

The affidavit by Van Acker' references exhibit numbers as ordered in a previous filing. *See Docket #20.*  For ease of reference, the undersigned has cited to the correct exhibit numbers.

nonetheless insufficient to establish an Eight Amendment violation. The Court assumes for the sake of argument that, as stated in Plaintiff's affidavit 1)Van Acker did *not* train him on the mixer 2) no "hands on training" was ever received and 3) Plaintiff's signature on the January 19, 2007 document showing that he received training was forged. The Court will also assume that Plaintiff asked for additional training and that he was directed by Van Acker (under threat of termination and transfer) to use the machine despite his reservations. However, Plaintiff acknowledges that 1) that he received "book lessons from the Food Tech book." (*Response* at 4) and 2) prison staff directed another inmate to train him. *Plaintiff's Affidavit* at ¶1. Significantly, while Plaintiff notes that the inmate directed to help him refused, he does not allege that staff members were aware that he had not received training from the other inmate. Even considering Plaintiff's contentions in the best possible light, his acknowledgment that he received book training on the mixer and that staff members directed another inmate to give him additional instruction on the mixer, undermines his claim that Van Acker perceived, and then ignored a risk to his well-being.

The Court also considers Reggie Welch's affidavit which states that prior to Plaintiff's injury "there [were] no warning signs[] or operational drawing[s] . . . posted anywhere dealing with [the mixer]" and that as a result of the accident, prisoners have received formal instruction in the use of the machine. *Affidavit of Reggie Welch* at ¶5. Notably, while Van Acker's affidavit states that a warning sign is now affixed to the mixer, it does not indicate whether the sign was in place at the time of Plaintiff's injury. *Affidavit of James Van Acker*

-12-

at ¶7.

Nonetheless, when Van Acker ordered Plaintiff to "hurry up and clean the machine out"on February 21, 2007, there is no indication that he perceived, then ignored a risk to Plaintiff. *Id.* at ¶4. Although Lutes allegedly received an injury just before Plaintiff began the kitchen position in December, 2006, Plaintiff and others used the machine from that point forward on a presumably daily basis without injury.[6]  Plaintiff does not allege that the machine appeared to be malfunctioning on the day of the accident or at anytime in the previous month.

In addition, although Plaintiff claims that the machine was defective, the accident report does not indicate that the mixer was malfunctioning, stating instead that after Lutes turned off the mixer, "[Plaintiff] put his hand in before it had stopped . . . not knowing [whether] machine had totally stopped." *Docket #26,* Exhibit 5.  Finally, I note that although Plaintiff claims that he was fearful of using the machine in the month leading up to the incident, he does not allege that Van Acker ever ordered him to use the machine in a manner that would risk his safety, *i.e.*, putting his hand in the feeder while the machine was engaged. While Plaintiff argues that Van Acker *should* have known of the potential for injury, the question of whether this Defendant's actions rose to the level of mere negligence (insufficient to support the constitutional claim) is not before this Court. *Farmer, supra,* 511 U.S. at 837,

---

[6]

Plaintiff's affidavit indicates that Lutes was injured in December, 2006 or earlier. *Id.* at ¶1.

-13-

114 S.Ct. at 1979.

I note in closing that Van Acker's actions directly following the injury (while not dispositive of the Eighth Amendment claims) are also inconsistent with allegations of deliberate indifference.  Plaintiff admits that when Van Acker was informed of the injury, he immediately contacted health services, complied with medical advice to locate the fingertips, and arranged emergency treatment.  *Affidavit of Reggie Welch,* at ¶3.  While Plaintiff alleges that he continues to "have trouble" with the previously injured fingers, Van Acker's actions following the accident appear to have been timely and appropriate. *Affidavit of Steven Hill* at ¶6.

### C.  Qualified Immunity

Defendants also argue that dismissal should be granted on the basis of qualified immunity. *Defendants' Brief* at 7-8.  Because  Plaintiff's Eighth Amendment rights were not violated, Defendants are also entitled to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).   Under *Saucier*, the threshold question is whether a constitutional violation occurred.  If it did not, a state officer or agent acting in the course of his or her official duties is protected by qualified immunity. *See also Dunigan v. Noble,* 390 F.3d 486, 495 (6th Cir. 2004).[7]

---

[7]

More recently, the Supreme Court held  that the two-step sequential analysis set forth in *Saucier* (first, determine whether there was a constitutional violation, and second, determine whether the constitutional right was clearly established) is no longer mandatory. *Pearson v. Callahan*, — U.S. — , 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); *See also,*

-14-

## IV.  CONCLUSION

For these reasons, I recommend that the motion be GRANTED, dismissing Eighth Amendment claims against all Defendants WITH PREJUDICE.   In the absence of constitutional violations, Defendants are also entitled to qualified immunity.

Any objections to this  Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D.

---

*Moldowan v. City of Warren* 578 F.3d 351, 375 (6th Cir. 2009).   Nevertheless, *Pearson* observed that the *Saucier* protocol, while not required, remains useful in particular cases. In this case, it is sufficient to say that under the first prong of *Saucier*, Plaintiff has not shown a constitutional violation as to any of Defendants.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  January 25, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 25, 2010.

s/Susan Jefferson
Case Manager

-16-